In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2949

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SULTAN ISSA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:19-cr-00097 — **Andrea R. Wood**, *Judge.*

ARGUED SEPTEMBER 27, 2021 — DECIDED DECEMBER 27, 2021

Before ROVNER, HAMILTON, and KIRSCH, *Circuit Judges.*

KIRSCH, *Circuit Judge.* Sultan Issa embezzled tens of millions of dollars, pled guilty, and was sentenced to a below-Guidelines 200 months in prison. He now appeals his sentence, claiming that the district court violated his due process rights by erroneously admitting and relying upon sentencing submissions from victims of his crimes. He also claims that the district court erroneously applied a vulnerable victim enhancement. Finding no errors, we affirm.

I

Sultan Issa engaged in a widespread embezzlement scheme from around 2010 to 2017, stealing from Roger Weston (his employer) and Weston's family members and from other individuals from whom he solicited money for phony investments. As Weston's Chief Financial Officer, Issa wielded power of attorney for Weston and exercised almost total control over the Weston family's considerable assets. Through forgery and fraud, Issa transferred tens of millions of dollars in Weston assets to his own accounts. Issa bought at least 25 residential properties across the planet, two private planes, four yachts, 60 firearms, and more with money that he stole from the Westons and other victims of his fraudulent schemes. The schemes cost the victims an astonishing $77,494,657. The government charged Issa with wire fraud under 18 U.S.C. § 1343.

Issa entered into a plea agreement with the government and admitted to his criminal conduct. Concerning the calculation of the Sentencing Guidelines, Issa agreed that his offense level should be "increased by 2 levels, pursuant to Guideline § 3A1.1(b)(1) because [Issa] knew or should have known that one or more victims of the offense was a vulnerable victim." R. 26 at 12. This increase reflected Issa's twofold admission in the agreement concerning two victims, Weston's mother and an individual named Grace Castillo:

> Among the accounts of the [Weston] Family Office from which ISSA fraudulently transferred funds was a trust account in the name of [Weston's] mother that was used to pay her medical and other expenses while she was suffering from an incapacitating illness. ISSA knew of

> [Weston's] mother's condition and the purpose of the trust account at the time he misappropriated funds from the account.

R. 26 at 5. And,

> In on or around April 29, 2016, ISSA fraudulently obtained $500,000 from [Grace Castillo] following the death of her husband based on ISSA's false representations that he would invest these funds on [Grace Castillo's] behalf when, in fact, ISSA intended to and did use these funds in furtherance of his ongoing scheme to defraud. At the time he fraudulently obtained these funds from [Grace Castillo], ISSA knew that [Grace Castillo] was unusually vulnerable due to the recent loss of her husband.

R. 26 at 7.

As the sentencing process got underway, the district court allowed the Weston family through their attorney, Christopher Gair, to file a sentencing submission asking for the maximum statutory sentence of 30 years, and to make oral statements at sentencing. The Westons' written and oral submissions recounted Issa's crimes and their effects on the family. Among other things, the Westons asserted that (1) Issa had not cooperated in the criminal proceedings; (2) Issa had begun embezzling in 2008; (3) Issa had continued criminal activity past 2017; (4) Issa had stolen an additional $50,000 in checks that went unreported in the government's sentencing submission; (5) Issa had given his children the middle names "Roger" and "Pam"—after the Westons—as part of his

scheme to ingratiate himself with and defraud the Westons;
(6) Issa had recorded a phony liability release to avoid his ob-
ligation on a $2.6 million loan from Weston; and (7) Issa had
access to unaccounted-for embezzled funds. Gair argued that
"[e]ven Bernie Madoff didn't do anything like" what Issa did
to the Westons and that "[Issa] is, beyond doubt, the best con-
fidence man who you are likely to ever see in this court-
room[.]" R. 66 at 28–29.

In pronouncing the sentence, the district court stated:

> [O]ne of the things in the record that has stood
> out to me here is actually the very personal na-
> ture of the offense, the suggestion in the record
> that Mr. Issa went so far as to name two of his
> children after the Westons, the efforts to ingra-
> tiate himself to the Westons with professions of
> love and loyalty to a familial level … it is one of
> the things that really stood out to me here as an
> aggravating factor, just the degree to which this
> appears to have been a very personal scheme at
> least with respect to the Westons.

*Id.* at 56. The district court then asked Issa's counsel, "Did he
really name two of his kids after Roger and Pam Weston?" *Id.*
at 57. Counsel replied, "I'm told he did, Judge, yes." *Id.* The
district court repeated that Issa's efforts to ingratiate himself
with the Westons were "very aggravating here." *Id.* at 77. Af-
ter crediting Issa with an acceptance of responsibility reduc-
tion, the district court sentenced Issa to 200 months in prison,
below the Guidelines range of 235–293 months.

## II

Issa seeks vacatur of his sentence. First, Issa argues that his due process rights were violated by the Westons' and Gair's involvement in the sentencing proceedings. Issa's theory is that the district court (a) transformed the victims into a de facto party, thereby violating the Crime Victims' Rights Act (CVRA), by considering and relying upon the Westons' sentencing memorandum and Gair's charged remarks, and (b) sentenced Issa based on inaccurate information by relying on various inaccurate claims (including the seven allegations above). See *United States v. Pulley*, 601 F.3d 660, 665 (7th Cir. 2010) (holding that remand for resentencing is the proper remedy when a sentencing court relies on critical, inaccurate information in deciding a sentence). Next, Issa argues that the district court erred in applying the vulnerable victim enhancement under U.S.S.G. § 3A1.1(b)(1) because Issa had not in fact targeted any vulnerable victim intentionally.

## A

Up first is Issa's due process violation theory concerning the involvement of the Westons and their attorney at sentencing and the district court's supposed reliance on the information alleged by the Westons. Under the CVRA, crime victims have the right to be "reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." 18 U.S.C. § 3771(a)(4). Victims may exercise this right through their attorneys. FED. R. CRIM P. 60(b)(2). There is, however, no right for "victims of crime to intervene in criminal proceedings." *United States v. Laraneta*, 700 F.3d 983, 985 (7th Cir. 2012).

Issa claims that the Westons' lawyer acted as a shadow prosecutor by making sentencing arguments and recommendations and by presenting allegedly false facts. This, Issa argues, transformed the Westons into a de facto party, violating the CVRA. But *Laraneta* is not about de facto intervention, it is about formal intervention, which did not happen here. See *Laraneta*, 700 F.3d at 985 (distinguishing between a victim's formal intervention and "merely … be[ing] heard"). The district court did precisely the right thing in accepting the written and oral submissions of the victims personally and through their lawyer and acted within its discretion in considering and weighing those submissions. Additionally, no facts in the record support any claim that Issa did not have notice or opportunity to respond to the victims' statements. The district court correctly applied the CVRA to the sentencing procedures.

While Issa has a due process right to be sentenced based on accurate information, he shoulders the burden to "show that inaccurate information was before the court and that the court relied upon it." See *United States v. Sanchez*, 989 F.3d 523, 546 (7th Cir. 2021) (citation omitted). Issa must therefore show that the alleged misinformation is indeed inaccurate and that the district court demonstrated actual reliance by giving explicit attention to the misinformation, basing its sentence at least in part on the misinformation, or giving specific consideration to the misinformation before imposing the sentence. See *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010).

Issa cannot satisfy his burden of showing that the district court sentenced him based on misinformation. For some of the alleged misinformation, such as the claims that Issa had begun embezzling in 2008, had continued to break the law

post-2017, had stolen an unaccounted-for $50,000, and had access to other unaccounted-for funds, Issa has simply not shown any indication that the district court actually relied on those claims at sentencing. The district court explicitly rejected the claim that Issa had not cooperated, finding that Issa had cooperated and qualified for acceptance of responsibility mitigation. As for the liability release claim, Issa made much of a Verified Amended Complaint, filed in the Circuit Court of Cook County on November 20, 2020, that indicated Weston knowingly signed the 2008 release on the $2.6 million loan so that he could receive a $1,000,000 repayment from a new mortgage Issa had obtained from JP Morgan. Issa asserts that this proves the Westons' contrary claim false. Even if we were to take judicial notice of this document not in the record, Issa has presented no evidence that the district court relied upon this allegedly false fact concerning the loan when sentencing Issa.

Finally, although the district court twice made comments at sentencing about the Westons' claim that Issa named his children after Pam and Roger Weston as part of Issa's scheme to ingratiate himself, Issa has not shown this to be false. On appeal, Issa claims that he named his children after the Westons out of gratitude for their generosity in loaning him money to buy a home rather than to ingratiate himself with them. But there are several problems with this argument, including that there are no facts in the record to support it and that Issa doesn't explain how this new reason is inconsistent with what the district court relied upon. Either way, Issa never disputed (below or on appeal) that his scheme was "very personal" with respect to the Westons or that he named two of his children after Pam and Roger Weston. That is what the district court found to be "very aggravating"—not

whether he named the children after Pam and Roger to ingratiate himself with the family or in gratitude for their generosity. That level of detail was inconsequential. Issa has not shown the district court relied on inaccurate information at sentencing.

B

We next turn to the district court's application of the vulnerable victim enhancement. But Issa waived his right to challenge the enhancement on appeal. Issa asserts that he merely forfeited this argument by failing to object to the enhancement at sentencing, which would prompt us to review the district court's decision for plain error. See *United States v. Jaimes-Jaimes*, 406 F.3d 845, 847 (7th Cir. 2005). Waiver, on the other hand, entirely precludes appellate review when a defendant has intentionally relinquished a known right. *Id*. "A defendant who stipulates to facts as part of a written plea agreement also waives challenges to the district court's reliance on those facts" in applying the Sentencing Guidelines. *United States v. Scott*, 657 F.3d 639, 640 (7th Cir. 2011) (finding a challenge to a sentencing enhancement for defrauding more than 50 victims waived when the plea agreement stipulated to the defendant's having defrauded more than 50 victims).

Issa argues that his stipulation to the vulnerable victim enhancement was a stipulation to a legal designation, not an admission of fact. But this distinction is illusory. Issa not only agreed to the application of the enhancement as part of his plea agreement but admitted facts that unquestionably established the enhancement. Issa admitted that Weston's mother was suffering from an incapacitating illness and that Grace Castillo had recently lost her husband, making both victims especially vulnerable to Issa's crimes. The district court was

entitled to rely on Issa's stipulations, and Issa has waived any challenge to the district court's application of the enhancement.

AFFIRMED