# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1148

_____

The Cincinnati Insurance       *
Company,      *
     *
         Appellee,      *
     *     Appeal from the United States
      v.      *     District Court for the
     *     Western District of Missouri.
Bluewood, Inc.,      *
     *
         Appellant.      *

_____

Submitted: October 15, 2008
Filed: March 24, 2009

_____

Before MELLOY, BEAM and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

In this diversity action for breach of contract and vexatious refusal to pay an insurance claim, Bluewood, Inc. appeals the judgment of the district court[1] entered on a jury verdict against the Cincinnati Insurance Company ("Cincinnati"). Although the

_____

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

jury found in favor of Bluewood, it did not award any damages beyond the $93,283 that Cincinnati had already paid on Bluewood's insurance claim. For the following reasons, we affirm.

## I.  BACKGROUND

Bluewood is the self-described "managing agent" of the Broadmoor apartment complex in Jefferson City, Missouri, and the beneficiary of an insurance policy issued by Cincinnati that covered Broadmoor against enumerated losses, including certain types of water damage. On the morning of December 27, 2004, James Cain and Steve Sweeten, the two-person maintenance staff at Broadmoor, learned that water was running under the door of a ground-level apartment in "Building C." Upon opening the door, Cain and Sweeten saw water falling from the ceiling and running down the walls. At least four inches of water had accumulated on the floor. Cain and Sweeten shut off the water and electricity to Building C, whose eight units were vacant, and proceeded to check the building's other seven apartments. Later that day, Cain and Sweeten discovered a similar problem in "Building B," which had five vacant units and three units with tenants who had left their apartments unattended from December 25 to December 27.

After Cain and Sweeten located the sources of the leaks—a burst pipe in one of the upper-level apartments in each building—they started to execute an improvised plan to dry the apartments. First, Cain and Sweeten used a squeegee to push standing water out the front doors of several apartments. Next, Cain and Sweeten removed the carpets and underlay pads in the apartments that had been saturated with water. This task occupied much of Cain and Sweeten's time for at least four days and perhaps as long as a week. During that period, a member of Broadmoor's staff rented six fans and at least one dehumidifier, which Cain and Sweeten used in the wet apartments on a rotating basis. In addition, Cain and Sweeten attempted to accelerate the drying process by cycling each apartment's heating and air conditioning units and opening

windows when weather conditions seemed favorable. Eventually, Cain and Sweeten noticed mold growing in some of the apartments that had been exposed to water.

Neither Cain nor Sweeten had any experience or expertise in the field of water removal—or what both parties sometimes refer to as "water remediation." Yet in the weeks that followed this incident, Bluewood did not hire a water-remediation professional to assist Cain and Sweeten.

In late December or early January, John Morrissey, Bluewood's president, called John Rowe, the insurance agent who sold Bluewood the Cincinnati policy that covered Broadmoor. While the substance of this conversation is disputed, its result is clear: Rowe did not contact Cincinnati to file a claim at that time. On January 27, 2005, a representative from Bluewood's "home office" in St. Louis visited Broadmoor to inspect the damage to Buildings B and C. The next day, Rowe submitted a loss notice form to Cincinnati, thereby indicating that Bluewood intended to file a claim.

Cincinnati and Bluewood each hired insurance adjusters to estimate the value of the loss in terms of the cost to remediate or replace the damaged property within Buildings B and C at Broadmoor. Cincinnati's adjuster reached an estimate of $93,191.83, excluding the cost of mold remediation, which Cincinnati insisted was not covered under the policy. Bluewood's adjuster reached an estimate of $536,138.20, which included the cost of at least some mold remediation. These competing estimates reflected differences in the adjusters' conclusions about the extent of the damage as well as a broader disagreement between Cincinnati and Bluewood over the question whether Bluewood complied with its contractual obligation to mitigate its damages.

Cincinnati paid Bluewood $93,283. Shortly thereafter, Bluewood exercised its right under the policy to demand an appraisal of the loss. Although Cincinnati and Bluewood each selected one of the two appraisers, who then agreed on an umpire,

Bluewood objected to Cincinnati's proposed "Agreement for Submission to Appraisal." In turn, Cincinnati filed this action in federal court, seeking a declaration that the policy's appraisal provision allowed Cincinnati to deny Bluewood's claim for additional damages, notwithstanding the result of the proposed appraisal. Bluewood raised five counterclaims, asserting, among other things, that Cincinnati had breached its contractual obligations and that Cincinnati's refusal to pay Bluewood's insurance claim was vexatious and unreasonable. When the parties agreed that their central dispute was over the amount of damages, the district court decided to treat the case as a diversity action for breach of contract and vexatious refusal to pay an insurance claim. In effect, Bluewood became the plaintiff and Cincinnati the defendant.

After a five-day trial held in September 2007, the jury returned a verdict in favor of Bluewood, but it did not award any damages beyond the $93,283 that Cincinnati had already paid. The district court denied Bluewood's motion for a new trial. Bluewood appeals, asking this court to vacate the judgment and remand the case for further proceedings.

## II.   DISCUSSION

Bluewood's primary argument on appeal is that the district court applied the wrong measure of damages to the loss at Broadmoor. According to Bluewood, the district court's error caused it to deliver a defective instruction to the jury and to improperly exclude expert testimony from one of Bluewood's proposed witnesses.

We typically review a district court's rulings concerning contested jury instructions for abuse of discretion. *Bass v. Flying J, Inc.*, 500 F.3d 736, 739 (8th Cir. 2007). Similarly, "[w]e review a district court's rulings on the admissibility of evidence for a clear and prejudicial abuse of discretion." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006). Nevertheless, because the district court's interpretation of the measure of damages under the Cincinnati policy is a matter of

state law, our review of the underlying legal question is de novo. *See Am. Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006).

The parties agree that Missouri law governs this case; thus, we consider the Missouri Supreme Court's interpretation of Missouri law to be authoritative. *See St. Paul Fire & Marine Ins. Co. v. Schrum*, 149 F.3d 878, 880 (8th Cir. 1998). If the Missouri Supreme Court has not yet spoken on a particular issue, we must predict its decision by examining "relevant state precedent, analogous decisions, considered dicta, . . . and any other reliable data." *Lindsay Mfg. Co. v. Hartford Accident & Indem. Co.*, 118 F.3d 1263, 1268 (8th Cir. 1997) (alteration in original) (quoting *Ventura v. Titan Sports, Inc.*, 65 F.3d 725, 729 (8th Cir. 1995)).

Under Missouri law, if an insurance policy is unambiguous, it will be "enforced as written," unless a statute or public policy requires a different result. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. 1993). In this case, the insurance policy's provisions concerning the valuation of a "loss" are unambiguous; namely, the policy provides that Cincinnati will determine the value of "covered property" according to the property's "actual cash value" at the time of the loss. The policy later defines "actual cash value" as "replacement cost less a deduction that reflects depreciation, age, condition and obsolescence." Accordingly, the district court gave the following instruction ("Instruction 14") to the jury:

> If you find in favor of Bluewood, Inc. on its [insurance] claim . . . you must award Bluewood, Inc. such sum as you may find from the evidence to be the "actual cash value" of the damaged property.
>
> "Actual cash value" as used in this instruction means the cost to replace the damaged property less a deduction that reflects depreciation, age, condition and obsolescence, if any.

Bluewood contends that the unambiguous terms of the policy should not have been enforced as written because section 379.150 of the Missouri Revised Statutes sets a different measure of damages. Section 379.150 provides:

> Whenever there is a partial destruction or damage to property covered by insurance, it shall be the duty of the party writing the policies to pay the assured a sum of money equal to the damage done to the property, *or* repair the same to the extent of such damage, not exceeding the amount written in the policy, so that said property shall be in as good condition *as before the fire*, at the option of the insured.

(Emphasis added.) The Missouri Supreme Court has held that the amount of a cash payment "equal to the damage done to the property" is "to be determined by the difference in value of the property immediately before and immediately after the loss." *Wells v. Mo. Prop. Ins. Placement Facility*, 653 S.W.2d 207, 214 (Mo. 1983). Thus, Bluewood made an offer of proof that the difference in the before-and-after "fair market value" of Buildings B and C at Broadmoor was $600,000. This figure substantially exceeded both Cincinnati's and Bluewood's estimates of the cost to remediate or replace the damaged property within those buildings ($93,191.83 and $536,138.20, respectively).

The district court concluded that section 379.150 applies only to cases involving losses caused by fire. As a result, the district court gave Instruction 14, which established that the measure of damages under the policy was the cost to replace the damaged property within Buildings B and C at Broadmoor (less a potential deduction for depreciation, age, condition and obsolescence) rather than the difference in the before-and-after fair market value of the damaged buildings. Over Bluewood's objection, the district court also excluded expert testimony from David Nunn regarding the fair market value of Broadmoor before and after the loss. Bluewood maintains that these decisions constituted "prejudicial errors" because the cash-settlement provision of section 379.150 supplies the measure of damages in cases

involving losses caused by water or any other covered risk. The Missouri Supreme Court has not announced whether section 379.150 applies to losses caused by risks other than fire, so we are left to predict how it would resolve this issue.

We begin with the text of the statute. *See State ex rel. Burns v. Whittington*, 219 S.W.3d 224, 225 (Mo. 2007) ("The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute."). Bluewood argues that we should read the disjunctive "or" as separating section 379.150 into two independent clauses. On this view, the first clause establishes a "cash-settlement option" that applies to losses caused by any risk, and the second clause establishes a "repair-or-replace option" that applies only to losses caused by fire.

This argument has some surface appeal, for "[c]anons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Moreover, the grammatical "rule of the last antecedent" holds that "a limiting clause or phrase" (here, "as before the fire") "should ordinarily be read as modifying only the noun or phrase that it immediately follows" (here, the repair-or-replace option). *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). But neither of these rules is absolute. *See id.* (noting that the rule of the last antecedent "can assuredly be overcome by other indicia of meaning"); *Reiter*, 442 U.S. at 339 (noting an exception to the rule of the disjunctive "or" where "the context dictates otherwise").

More than any grammatical considerations, the phrase appearing at the end of section 379.150—"at the option of the insured"—informs the meaning of the statute's two principal clauses. In this context, "option" implies a *choice* between two forms of compensation: a cash settlement or a course of repairs. *See Wells*, 653 S.W.2d at 214 ("Section 379.150 provides any insured with two options. He may elect either to take a cash payment or to have the insurer repair the property."). We reject

Bluewood's proposed interpretation of section 379.150 because it would eliminate the insured's choice in cases where the loss is caused by a risk other than fire. If the repair-or-replace option applies only to losses caused by fire, then a cash settlement would become the exclusive option in cases, like this one, where the loss was caused by water. In practice, the phrase "at the option of the insured" would be transformed into "at the option of the insured, except where the loss is caused by a risk other than fire." We are not convinced that the Missouri Supreme Court would adopt an interpretation of section 379.150 that produces such an incongruous result. *See Bachtel v. Miller County Nursing Home Dist.*, 110 S.W.3d 799, 801 (Mo. 2003) ("The provisions of a legislative act are not read in isolation but construed together, and if reasonably possible, the provisions will be harmonized with each other."). Instead, we predict that the Missouri Supreme Court would harmonize the statute's two principal clauses by holding that the limiting phrase "as before the fire" identifies the one and only type of "partial destruction or damage to property covered by insurance" that triggers the insured's right to choose its preferred form of compensation.

Bluewood argues in the alternative that we should disregard the limiting phrase "as before the fire" in light of the expansion of insurance coverage beyond losses caused by fire that has occurred in the 130 years since section 379.150 was enacted. On this view, both the cash-settlement option and the repair-or-replace option now apply to losses caused by any covered risk. We reject Bluewood's alternative construction of section 379.150 because it would turn the limiting phrase "as before the fire" into mere surplusage. Notwithstanding the expansion of insurance coverage over the last 130 years, we predict that the Missouri Supreme Court would decline Bluewood's invitation to disregard part of the statutory text. *See State ex rel. SSM Health Care St. Louis v. Neill*, 78 S.W.3d 140, 144 (Mo. 2002) ("When interpreting a statute . . . this Court is required to give meaning to every word of the legislative enactment.").

The parties identified four decisions in which the Missouri Court of Appeals has mentioned that section 379.150 might extend to losses caused by risks other than fire. In the first of these decisions, the court of appeals noted that the plaintiff's argument—presumably in favor of extending section 379.150 to cases involving wind damage—was "theoretically correct" but ultimately not dispositive because of a failure of proof. *Cady v. Hartford Fire Ins. Co.*, 554 S.W.2d 499, 503 (Mo. Ct. App. 1977). In the three other decisions, the court of appeals cited *Cady* for the proposition that section 379.150 "might potentially apply to situations other than losses due to fire" but avoided reaching the merits of the issue.[2] *Porter v. Shelter Mut. Ins. Co.*, 242 S.W.3d 385, 391 (Mo. Ct. App. 2007); *Herring v. Prudential Prop. & Cas. Ins. Co.*, 96 S.W.3d 893, 894 n.1 (Mo. Ct. App. 2002); *Lopez v. Am. Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 n.1 (Mo. Ct. App. 2002). Bluewood argues that these snippets of dicta suggest that section 379.150 *does* extend to losses caused by risks other than fire. We disagree. The court of appeals's passing references to section 379.150 merely confirm that the statute's reach is an open question. The decisions on which Bluewood relies do not conclusively establish the position of the court of appeals on that issue, much less the position of the Missouri Supreme Court.

After examining the relevant authorities, we predict that the Missouri Supreme Court would find that section 379.150 applies only to cases involving losses caused by fire. Contrary to Bluewood's proposed constructions, the most natural reading of section 379.150 holds that the limiting phrase "as before the fire" identifies the one and only type of "partial destruction or damage to property covered by insurance" that triggers the insured's right to choose between a cash settlement and a course of repairs. This interpretation harmonizes the statute's two principal clauses and gives

_____

[2]In a fifth decision, the Missouri Court of Appeals dismissed on procedural grounds an appeal from a grant of summary judgment that was based on the trial court's finding that section 379.150 applied only to "insurance claims arising from damage caused by *fire*." *Anderson v. Am. Family Mut. Ins. Co.*, 173 S.W.3d 356, 357 (Mo. Ct. App. 2005).

meaning to every word of the statutory text. Consequently, we reject Bluewood's contention that the district court misinterpreted Missouri law concerning the proper measure of damages in this case. We also reject, without further comment, Bluewood's derivative arguments that Instruction 14 established the wrong measure of damages and that the district court improperly excluded expert testimony from David Nunn insofar as those arguments are premised on the applicability of section 379.150.

We now address Bluewood's remaining arguments, starting with Bluewood's three alternative challenges to Instruction 14. Apart from setting the measure of damages under the policy, Instruction 14 also provided that Bluewood "had a duty under the law to mitigate its damages—that is, to exercise ordinary care under the circumstances to minimize its damages." Bluewood's initial contention is that the district court failed to define the term "ordinary care." Bluewood next asserts that the district court's phrasing implied an absolute duty to "abate and stop" the water and mold damage at Broadmoor, even if that was not scientifically possible. Last, Bluewood argues that the district court's description of Bluewood's duty to mitigate its damages gave the jury a "roving commission" to return an unlawful verdict.

To preserve a challenge to an allegedly defective jury instruction, a party must "state distinctly [its] specific objections . . . before the jury retires." *Dupre v. Fru-Con Eng'g Inc.*, 112 F.3d 329, 333 (8th Cir. 1997); *see also* Fed. R. Civ. P. 51(c)(1) ("A party who objects to an instruction . . . must do so on the record, stating distinctly the matter objected to and the grounds for the objection."); Fed. R. Civ. P. 51(c)(2)(A) ("An objection is timely if a party objects at the opportunity [that the district court must provide before the instructions are delivered] under Rule 51(b)(2) . . . ."). The purpose of this rule is to "afford the trial court an opportunity to cure [a] defective instruction and to prevent litigants from [obtaining] a new trial in the event of an adverse verdict by covertly relying on the error." *Dupre*, 112 F.3d

at 333 (first alteration in original) (quoting *Mo. Pac. R.R. v. Star City Gravel Co.*, 592 F.2d 455, 459 (8th Cir. 1979)).

Where a challenge has not been adequately preserved, we review the district court's instruction for plain error. *Id.* at 333 (citing *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). Our review is narrowly circumscribed, for we will reverse only in "the exceptional case in which [an] error has 'seriously affected the fairness, integrity, or public reputation of the judicial proceedings.'" *Slidell, Inc. v. Millennium Inorganic Chems., Inc.*, 460 F.3d 1047, 1054 (8th Cir. 2006) (quoting *Genthe v. Lincoln*, 383 F.3d 713, 718 (8th Cir. 2004)).

The record shows that Bluewood failed to preserve the three alternative challenges to Instruction 14 that it seeks to raise on appeal. On the contrary, Bluewood objected to Instruction 14 at trial "on the basis that . . . the proper measure of damages in this case is [the] fair market value of the property immediately before and immediately after the loss under [s]ection 379.150." Bluewood also argued that "the use of the term actual cash value . . . is misleading and will allow the jury an impermissible roving commission to take into consideration matters such as repair cost, which are not relevant under [Bluewood's proposed measure of damages]." The district court overruled Bluewood's contemporaneous objection based on its finding that Instruction 14 set forth the proper measure of damages under the policy. But the district court was not afforded an opportunity to correct the alleged defects in Instruction 14's so-called "tail for mitigation" because Bluewood did not specifically object to those provisions.[3] Although Bluewood used the term "roving commission" when it explained the basis for its contemporaneous objection, the substance of that

---

[3]The district court noted, however, that Bluewood's proposed instructions omitted any variation on the "tail for mitigation" included in Instruction 14. The district court's unprompted observation appears to be the only reference to the mitigation requirement during the extended colloquy between the district court and both parties about the court's proposed instructions.

objection has no connection to Bluewood's arguments on appeal concerning the district court's description of the mitigation requirement. We therefore review Instruction 14's mitigation provisions for plain error.[4]

Having carefully reviewed Bluewood's unpreserved challenges, we conclude that this is not the exceptional case in which an instructional error has "prejudice[d] the substantial rights of a party and would result in a miscarriage of justice if left uncorrected." *Slidell*, 460 F.3d at 1054 (quoting *Genthe*, 383 F.3d at 718). Bluewood's first two challenges amount to mere quibbles with the form and terminology of the instruction, which we leave to the district court's "broad discretion." *Id.* While Instruction 14 may not have been a "model of clarity," this court "will not find error . . . simply because [an instruction was] . . . technically imperfect." *Ryther v. KARE 11*, 108 F.3d 832, 846 (8th Cir. 1997) (en banc). Bluewood has not shown that the district court affirmatively misstated the legal standard governing the meaning of ordinary care or the mitigation requirement. *Cf. Fed. Enters., Inc. v. Greyhound Leasing & Fin. Corp.*, 786 F.2d 817, 820 (8th Cir. 1986) (holding that the district court's "use and definition of 'ordinary care' [were] inaccurate"). Instead, Bluewood's contention that the district court's phrasing implied an absolute duty to prevent all water damage at Broadmoor rests on a fundamentally unreasonable interpretation of the phrase "*ordinary* [not extraordinary] care *under the circumstances* [not in an absolute sense] to *minimize* [not to prevent altogether] its

---

[4]Bluewood conceded at oral argument that its "roving commission" objection did not preserve its challenge to the district court's failure to define the term "ordinary care." Nonetheless, Bluewood later submitted a letter to inform this court that it raised the other two challenges to Instruction 14's provisions regarding mitigation in its motion for a new trial. This fact is inapposite, however, since a party must present its specific objections to an allegedly defective jury instruction "*before* the jury retires." *Dupre*, 112 F.3d at 333 (emphasis added). Because Bluewood's contemporaneous objection focused exclusively on the measure of damages, it did not preserve any of the three challenges to Instruction 14 that Bluewood seeks to raise on appeal.

damages." In light of the evidence that Bluewood's water remediation efforts were inadequate and ineffective, we find that Bluewood has not met even the threshold burden of demonstrating that Instruction 14 misled the jury into withholding damages to which Bluewood was rightfully entitled.

Bluewood's third challenge is equally lacking in merit, because Instruction 14 did not assume a disputed fact or submit an abstract legal question to the jury. *See Seitz v. Lemay Bank & Trust Co.*, 959 S.W.2d 458, 463 (Mo. 1998) ("A 'roving commission' occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic' to impose liability." (quoting *Davis v. Jefferson Sav. & Loan Ass'n*, 820 S.W.2d 549, 556 (Mo. Ct. App. 1991))). As far as we can tell, the challenged portion of Instruction 14 did not assume any facts, disputed or otherwise. And the question that Instruction 14 submitted to the jury—whether Bluewood exercised ordinary care under the circumstances to minimize its damages—was linked directly to one of the case's central issues. Considering the relevant evidence, there can be little doubt that Instruction 14 fairly and accurately defined Bluewood's duty to mitigate its damages. Thus, we conclude that the district court's submission of Instruction 14 did not amount to plain error.[5]

Finally, we turn to Bluewood's challenges to two of the district court's evidentiary rulings, which we review for "a clear and prejudicial abuse of discretion." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006). Bluewood

---

[5]Given Bluewood's failure to show any reasonable likelihood that the district court's alleged instructional errors affected the jury's verdict, we would reach the same result if we reviewed Instruction 14 under the abuse of discretion standard that applies where a party has preserved an objection for appellate review. *See Green v. City of St. Louis*, 507 F.3d 662, 669 (8th Cir. 2007) ("We review a district court's decisions regarding jury instructions for abuse of discretion, reversing only if any error affected a party's substantial rights.").

first argues that, even assuming replacement cost was the proper measure of damages under the policy, the district court nevertheless abused its discretion by excluding expert testimony from David Nunn. As the district court correctly noted, however, Nunn's proposed testimony regarding the fair market value of Broadmoor before and after the loss was not relevant to the jury's determination of the cost to replace the damaged property within Buildings B and C.[6] *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). More importantly, the district court held that "any small probative value" that Nunn's testimony might have concerning the amount of depreciation (which the jury was instructed to deduct from the cost to replace the damaged property) was outweighed by the risk of confusing the jury about the method of calculating Bluewood's damages. *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury . . . .").

Bluewood does not allege that the district court deviated from the Federal Rules of Evidence by, for example, failing to consider the relevant facts or the parties' arguments. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. ---, 128 S. Ct. 1140, 1147 (2008) (noting that a district court may abuse its discretion by applying a "*per se* rule" to exclude evidence without considering the "facts and arguments in [the] particular case"). Bluewood instead invites us to set aside the district court's ruling based on our independent assessment of the probative value of Nunn's testimony. This misunderstands the nature and purpose of our deferential standard of review. *See Olson v. Ford Motor Co.*, 481 F.3d 619, 623 (8th Cir. 2007) ("The reason

---

[6]Bluewood argues on appeal that the meaning of replacement cost to a "layperson" is not the "cost to replace" a piece of damaged property, but rather "the current *fair market value* of the relevant property *immediately prior to the loss*." (Emphasis added.) Bluewood does not offer any support for this facially implausible premise, so we reject its proffered conclusion—that Nunn's testimony was extremely relevant—without additional analysis. *Cf.* Webster's Third New International Dictionary 1925 (1986) (defining "replacement cost" as "the current cost of replacing a fixed asset with a new one of equal effectiveness.").

for [our] extremely deferential standard of review is obvious: A Rule 403 ruling . . . depends on factors that are uniquely accessible to the trial judge who is present in the courtroom and uniquely inaccessible to an appellate judge who must take the case on a cold record."). Since Bluewood has failed to identify any deficiency in the district court's application of Rule 403, we conclude that the decision to exclude Nunn's testimony was not an abuse of discretion.

Bluewood also challenges the district court's decision to admit expert testimony from Ivan Turner about the growth and remediation of mold. Bluewood argues that the district court should have excluded Turner's testimony under Rule 702 because Turner lacked the requisite "knowledge, skill, experience, training, or education" to testify about these technical subjects. Moreover, Bluewood claims that Turner's professed expertise in the fields of water and mold remediation is nothing more than "junk science."

As Cincinnati points out, Turner testified at length about his knowledge, skill, experience and training in the relevant fields. In particular, Turner testified that he had received advanced training in methods of "applied structural drying," that he held certifications from the Institute of Inspection, Cleaning and Restoration and the Indoor Air Quality Association, that he had participated in between 1,500 and 2,000 water remediation jobs over the past 15 years, and that he regularly performs experimental testing related to mold growth and prevention. While Bluewood makes much of the fact that Turner did not attend college, the Supreme Court has made clear that the "test of reliability is 'flexible,'" and it does not necessarily turn on a single factor. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-42 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 594-95 (1993)). Apart from its conclusory assertions, Bluewood offers no evidence to rebut the reliability of Turner's testimony about the growth and remediation of mold, or the techniques on which Turner relied in forming the opinions that he articulated in this case. Likewise, Bluewood has failed to identify any deficiency in either the district court's application of Rule 702 or its

discharge of the "gatekeeping function" under *Daubert* and *Kumho Tire*. *See Kumho Tire*, 526 U.S. at 158-59 (Scalia, J., concurring) ("[T]rial-court discretion in choosing the manner of testing expert reliability . . . is not discretion to abandon the gatekeeping function."). We thus conclude that the decision to admit Turner's testimony was not an abuse of discretion.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____