BENTON, Circuit Judge.
Robert M. Fast pled guilty to one count of receiving and distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2). The district court[1] ordered him to pay $3,333 restitution to Vicky — the pseudonym for the child-pornography victim whose images were on Fast’s computer — under 18 U.S.C. § 2259. Vicky challenges the restitution award by direct appeal and in a petition for mandamus.[2] She argues that Fast need not proximately cause the losses defined in subsections 2259(b)(3)(A) through (E) to be liable for them, and that the district court misinterpreted the “full amount of [her] losses” under section 2259(b)(1). Because she lacks standing as a nonparty to bring a direct appeal, this court grants the motions to dismiss by Fast and the government. Having jurisdiction over her mandamus petition under the Crime Victims’ Rights Act (CVRA), 18 U.S.C. § 3771(d)(3), this court denies her petition.
I.
The CVRA grants crime victims, including Vicky, the “right to full and timely restitution as provided in law.” 18 U.S.C. § 3771(a)(6). The district court must order restitution. Id. § 2259(a), (b)(4)(A). “The language of 18 U.S.C. § 2259 reflects a broad restitutionary purpose.” In re Amy Unknown, 701 F.3d 749, 760 (5th Cir.2012) (en banc) (citations omitted); accord United States v. Julian, 242 F.3d 1245, 1247 (10th Cir.2001). “Restitution” is the “full amount of the victim’s losses as determined by the court,” including the costs enumerated in subsections 2259(b)(3)(A) through (F). 18 U.S.C. § 2259(b)(1), (3). The district court resolves “[a]ny dispute as to the proper amount or type of restitution ... by the preponderance of the evidence.” Id. § 3664(e). The government bears the “burden of demonstrating the amount of the loss sustained by a victim as a result of the offense.” Id.
*715 Vicky documents $1,224,697.04 in losses from her sexual abuse and the distribution of the pornographic images. Before Fast’s sentencing, she sought $952,759.81 restitution (having previously collected $271,937.28 from other defendants). The government initially requested “at least $10,000” restitution. The district court ruled that Fast need not have proximately caused the losses defined in subsections 2259(b)(3)(A) through (E) to be liable for them. United, States v. Fast, 820 F.Supp.2d 1008, 1010 (D.Neb.2011). The court initially ordered Fast to pay $19,863.84 restitution. Id. On appeal, the government agreed with Fast that proximate cause is required. This court remanded to the district court to reconsider Vicky’s restitution award (denying her motion to intervene as moot). United States v. Fast, No. 11-3455, at *1 (8th Cir. May 15, 2012).
On remand, the district court determined “that proximate cause is required for each element of restitution under 18 U.S.C. § 2259.”[3] United States v. Fast, 876 F.Supp.2d 1087, 1088 (D.Neb.2012). It found Fast liable for losses accrued after June 25, 2010 — when he began committing the crime. Id. at 1089. The district court concluded that Fast “proximately caused harm to Vicky’ that directly resulted in compensable injury and damage to her in the sum of $3,333.” Id. at 1090. This amount consisted of “$2,500 for medical and psychiatric care, occupational therapy, and lost income under 18 U.S.C. § 2259(b)(3)(A), (B), & (D),” and $833 for “attorney fees and costs under 18 U.S.C. § 2259(b)(3)(E).” Id. at 1088.
II.
Fast and the government move to dismiss Vicky’s direct appeal of the restitution order, arguing that she lacks standing because she is not a party to the case. “Standing is a fundamental element of federal court jurisdiction.” Curtis v. City of Des Moines, 995 F.2d 125, 128 (8th Cir.1993), citing Sierra Club v. Morton, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Those failing to “intervene or otherwise attain party status may not appeal a district court’s judgment.” Id. (citation omitted). “[A]ll Courts of Appeals to have addressed this issue have concluded that nonparties cannot directly appeal a restitution order entered against a criminal defendant.” United States v. Stoerr, 695 F.3d 271, 277 (3d Cir.2012) (citations omitted); see In re Amy Unknown, 701 F.3d at 756; United States v. Alcatel-Lucent France, SA, 688 F.3d 1301, 1307 (11th Cir.2012) (per curiam); United States v. Monzel, 641 F.3d 528, 542 (D.C.Cir.), cert. denied, — U.S. -, 132 S.Ct. 756, 181 L.Ed.2d 508 (2011); United States v. Aguirre-Gonzalez, 597 F.3d 46, 53-55 (1st Cir.2010); In re Acker, 596 F.3d 370, 373 (6th Cir.2010) (per curiam); United States v. Hunter, 548 F.3d 1308, 1315-16 (10th Cir.2008); United States v. United Sec. Sav. Bank, 394 F.3d 564, 567 (8th Cir.2004) (per curiam); United States v. Mindel, 80 F.3d 394, 398 (9th Cir.1996); United States v. Grundhoefer, 916 F.2d 788, 793 (2d Cir.1990); see also United States v. Laraneta, 700 F.3d 983, 986 (7th Cir.2012) (finding “no quarrel” with the result that “a crime victim cannot appeal from a denial of restitution in a criminal case because the victim is not a party”).
Vicky did not successfully intervene, and the CVRA does not grant her party status. The CVRA grants the government the *716 right to assert a victim’s rights on direct appeal, 18 U.S.C. § 3771(d)(4), and details when a victim may re-open a plea or sentence through a motion, id. § 3771(d)(5); see Hunter, 548 F.3d at 1315-16 (“[Section 3771(d)(5) ] makes no mention of a direct appeal.”). The CVRA grants a victim the right to petition for mandamus. 18 U.S.C. § 3771(d)(3). “Nothing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction.” Id. § 3771(d)(6). Allowing victims to appeal would “erode the CVRA’s attempt to preserve the Government’s discretion.” In re Unknown, 701 F.3d at 757; accord Hunter, 548 F.3d at 1316. “That Congress included these provisions but did not provide for direct appeals by crime victims is strong evidence that it did not intend to authozize such appeals.” Monzel, 641 F.3d at 542 (emphasis in original) (“[T]he CVRA’s ‘carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.’ ” (emphasis in original), quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 254, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (internal quotation marks omitted)). The CVRA does not allow Vicky to appeal directly.
Vicky invokes 28 U.S.C. § 1291. But “ § 1291’s broad jurisdictional grant does not peraiit us to ignore the requirement that the appellant have standing to appeal.” Stoerr, 695 F.3d at 277 n. 5 (citation omitted). Vicky cites several cases where courts have heard non-party appeals. None, except United States v. Kones, 77 F.3d 66, 68 (3d Cir.1996), allowed a non-party appeal that, would alter a defendant’s sentence. See Monzel, 641 F.3d at 542-43. A criminal restitution order is part of a defendant’s sentence. Id. at 541; see United Sec. Sav. Bank, 394 F.3d at 567. “A crime victim does not have standing to appeal a district court’s l'estitution order.” United Sec. Sav. Bank at 567; Aguirre-Gonzalez, 597 F.3d at 54 (“[Cjrime victims have no light to dil'ectly appeal a defendant’s criminal sentence .... ”).
In Kones, “a purported victim sought to appeal the district court’s conclusion that she was not entitled to restitution.” Stoerr, 695 F.3d at 277 n. 5, citing Kones, 77 F.3d at 68. “Without addressing the purpoi'ted victim’s standing to appeal, [the Third Circuit] noted in one sentence that [it] had appellate jurisdiction under 28 U.S.C. § 1291.” Id., citing Kones, 77 F.3d at 68. The Third Circuit later held that it was not “bound by the bald jurisdictional statement in Kones ” — a “ ‘drive-by jurisdictional ruling[],’ in which jurisdiction ‘ha[s] been assumed by the parties, and ... assumed without discussion by the [c]ourt,’ does not create binding precedent.” Id. (alterations in original), quoting Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 91, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); see Monzel, 641 F.3d at 541 n. 13.
In the Curtis case, this court allowed nonparties to appeal because they had “an interest in the cause litigated and participated in the proceedings actively enough to make [them] privy to the record ... [even though] [they] w[ei*e] not named in the complaint and did not intezwene.” Curtis, 995 F.2d at 128 (second alteration in original) (omission in original) (citation and internal quotation marks omitted). Curtis, unlike here, was a civil case and did not alter the defendant’s sentence.
Vicky argues that because the CVRA grants victims the “right” to restitution, see 18 U.S.C. § 3771(a)(6), she has an “injury” that gives her standing to appeal. But see United Sec. Sav. Bank, 394 F.3d at 567 (“The direct, distinct, and pal *717 pable injury in a criminal sentencing proceeding plainly falls only on the defendant who is being sentenced.”). But granting victims a right to restitution neither makes them a party to the case, nor gives them a right to appeal. See, e.g., Aguirre-Gonzalez, 597 F.3d at 53 (“Notwithstanding the rights reflected in the restitution statutes, crime victims.are not parties to a criminal sentencing proceeding ... [and] may not appeal a defendant’s criminal sentence.” (internal citations and citations omitted)). “[T]he CVRA expressly identifies the avenues of appellate review of a district court’s denial of restitution ... and neither of those avenues entitles a crime victim to direct appeal.” Alcatel-Lucent France, SA, 688 F.3d at 1306; see also Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis, 444 U.S. 11, 19, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (“[Wjhere a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.”); see also Aguirre-Gonzalez, 597 F.3d at 54 (“The Federal Rules of Civil Procedure allow non-parties to intervene to assert their rights. The Federal Rules of Criminal Procedure contain no comparable provision.” (citation omitted)).
Vicky cites additional cases where a non-party crime victim was allowed to appeal.[4] See United States v. Yielding, 657 F.3d 722, 726 n. 2 (8th Cir.2011) (holding the nonparty had “standing to appeal” because “it [was] bound or adversely affected by an injunction”); In re Siler, 571 F.3d 604, 608-09 (6th Cir.2009) (allowing nonparties to appeal the use of a presentencing report in a civil suit); United States v. Perry, 360 F.3d 519, 523-24 (6th Cir.2004) (allowing a non-party victim to appeal an order vacating a lien securing her restitution award); Doe v. United States, 666 F.2d 43, 45-46 (4th Cir.1981) (allowing a non-party victim to appeal the use of sexual history evidence). “But none of the cases she cites involved a request by a victim to alter a defendant’s sentence.” See Monzel, 641 F.3d at 543; accord Aguirre-Gonzalez, 597 F.3d at 54; Hunter, 548 F.3d at 1314.
Vicky cites several cases that allowed other nonparties to appeal in criminal cases. See United States v. Antar, 38 F.3d 1348, 1355-56 (3d Cir.1994) (permitting the press to appeal a district court order sealing a voir dire transcript); In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records, 864 F.2d 1559, 1561 (11th Cir.1989) (allowing the press to appeal the scope of a closure order); Anthony v. United States, 667 F.2d 870, 878 (10th Cir.1982) (allowing appeal of discovery rulings); United States v. Hubbard, 650 F.2d 293, 314 (D.C.Cir.1980) (allowing appeal of an order unsealing documents found during a search); United States v. Briggs, 514 F.2d 794, 799 (5th Cir.1975) (exercising jurisdiction over an appeal by unindicted co-conspirators challenging an order refusing to strike their names from the indictment). These “appeals all related to specific trial issues and did not disturb a final judgment.” Hunter, 548 F.3d at 1314; see In re Amy Un *718 known, 701 F.3d at 756 (“[These cases] allowed non-parties to appeal discrete pretrial issues ... unrelated to the merits of the criminal cases from which they arose.” (citations omitted)).
Vicky claims that jurisdiction is nonetheless proper under the collateral order doctrine. See Mohawk Industries, Inc. v. Carpenter, 558 U.S. 100, 130 S.Ct. 599, 605, 175 L.Ed.2d 458 (2009). “[U]n-der the collateral order doctrine, prejudgment appellate review is allowed in a criminal case for trial court orders which [ (1) ] conclusively determine the disputed question, [ (2) ] resolve an important issue completely separate from the merits of the action, and [ (3) ] are effectively unreviewable on appeal from final judgment.” United States v. Ivory, 29 F.3d 1307, 1311 (8th Cir.1994). She fails the second prong “because the issue of restitution is part and parcel of the criminal sentence.” Alcatel-Lucent France, AS, 688 F.3d at 1305 n. 1. She also fails the third prong because the CVRA permits the government to appeal (and, as discussed below, allows her to petition for mandamus). See 18 U.S.C. § 3771(d)(3)-(4). Because Vicky lacks standing, the motions to dismiss her direct appeal are granted. She may proceed only by mandamus. Id. § 3771(d)(3).
III.
According to Fast and the government, the traditional standard for mandamus applies, requiring Vicky to show that (1) she lacks “adequate alternative means” to obtain relief, (2) her right to “issuance of the writ is clear and indisputable,” and (3) “the writ is appropriate under the circumstances.” Cheney v. U.S. Dist. Court for Dist. of Columbia, 542 U.S. 367, 380-81, 124 S.Ct. 2576, 159 L.Ed.2d 459 (2004) (internal citations, citations, and internal quotation marks omitted); Kreditverein der Bank Austria Creditanstalt fur Niederosterreich und Bergenland v. Nejezchleba, 477 F.3d 942, 948 (8th Cir.2007), citing Mallard v. U.S. Dist. Ct. for the Dist. of Iowa, 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). Vicky urges this court to apply the standard of review for a direct appeal.
The CVRA states:
If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus. The court of appeals may issue the writ on the order of a single judge.... The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed.... If the court of appeals denies the relief sought, the reasons for the denial shall be clearly stated on the record in a written opinion.
18 U.S.C. § 3771(d)(3). That a court must “take up and decide” the petition within 72 hours “says nothing about the standard of review.” Monzel, 641 F.3d at 533-34; accord In re Amy Unknown, 701 F.3d at 758 n. 6. Rather, “[t]he very short timeline in which appellate courts must act, and the fact that a single circuit judge may rule on a petition, confirm the conclusion that Congress intended” the traditional standard for mandamus to apply. In re Amy Unknown, 701 F.3d at 758; In re Antrobus, 519 F.3d 1123, 1130 (10th Cir.2008) (“It seems unlikely that Congress would have intended de novo review in 72 hours of novel and complex legal questions_”).
“That Congress called for ‘mandamus’ strongly suggests it wanted ‘mandamus.’ ” Monzel, 641 F.3d at 533, citing Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952); In re Acker, 596 F.3d at 372. Had Congress intended an ordinary appellate standard of review, it could have given victims a right to direct appeal. See In re Antrobus, 519 F.3d at 1129, citing 18 U.S.C. § 3771(d)(4). *719 “That Congress expressly provided for ‘mandamus’ in § 3771(d)(3) but ordinary appellate review in § 3771(d)(4) invokes ‘the usual rule that when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.’ ” Monzel, 641 F.3d at 533, quoting Sosa v. Alvarez-Machain, 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004).
Vicky argues that applying the traditional standard for mandamus renders superfluous the right to petition for mandamus under the CVRA, because the All Writs Act, 28 U.S.C. § 1651, already grants that right. But the CVRA, unlike the All Writs Act, requires the court to “take up and decide” the petition within 72 hours and to issue a “written opinion” if it denies relief. See 18 U.S.C. § 3771(d)(3). Thus, the CVRA affords victims “more rights than they would otherwise have.” In re Antrobus, 519 F.3d at 1129-30.
Vicky claims four circuits support her position. With little discussion, the Second Circuit opined, “It is clear ... that a petitioner seeking relief pursuant to the [CVRA’s] mandamus provision ... need not overcome the hurdles typically faced by a petitioner....” In re W.R. Huff Asset Mgmt. Co., LLC, 409 F.3d 555, 562 (2d Cir.2005). The Ninth Circuit stated, “The CVRA creates a unique regime that does, in fact, contemplate routine interlocutory review of district court decisions denying rights asserted under the statute.” Kenna v. U.S. Dist. Court for C.D. Cal., 435 F.3d 1011, 1017 (9th Cir.2006). Without needing to reach the issue, the Third Circuit commented that “mandamus relief is available under a different, and less demanding, standard under 18 U.S.C. § 3771 in the appropriate circumstances.” In re Walsh, 229 Fed.Appx. 58, 60 (3d Cir.2007) (per curiam) (unpublished). The Eleventh Circuit simply granted the writ without discussing any standard. See In re Stewart, 552 F.3d 1285, 1288-89 (11th Cir.2008) (per curiam). But see In re Stewart, 641 F.3d 1271, 1274-75 (11th Cir.2011) (per curiam) (questioning the prior ruling). These decisions, lacking detailed analysis, are unpersuasive. See In re Amy Unknown, 701 F.3d at 758 n. 6 (“The lack of reasoning ... fails to convince us that anything other than traditional mandamus standards [apply].”); In re Antrobus, 519 F.3d at 1128 (“With respect to our sister circuits, and aware of the time pressures under which they operated, we see nothing in their opinions explaining why Congress chose to use the word mandamus rather than the word appeal.” (emphases in original)).
This court therefore applies the traditional standard for mandamus. “The issuance of a writ of mandamus is an extraordinary remedy reserved for extraordinary situations.” In re MidAmerican Energy Co., 286 F.3d 483, 486 (8th Cir.2002) (per curiam), citing Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 289, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). “‘[Ojnly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy.’ ” In re Amy Unknown, 701 F.3d at 757 (alteration in original), quoting Kerr v. U.S. Dist. Court for N. Dist. of Cal., 426 U.S. 394, 402, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). “Issuance of the writ is largely a matter of discretion. ...” Id. at 757, citing Schlagenhauf v. Holder, 379 U.S. 104, 112 n. 8, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).
Vicky meets the first traditional condition for mandamus — no adequate alternative means to obtain relief — because mandamus is her only avenue for relief. See Cheney, 542 U.S. at 380-81, 124 S.Ct. 2576 (“[The first] condition [is] designed to en *720 sure that the writ will not be used as a substitute for the regular appeals process.” (citation omitted)). She must show that the district court clearly and indisputably erred in the restitution amount it awarded her, and, if so, that the writ is appropriate.
IV.
Vicky argues that, to be liable, Fast need not have proximately caused the losses defined in subsections 2259(b)(3)(A) through (E). This court reviews de novo the district court’s interpretation of section 2259. United States v. Schmidt, 675 F.Bd 1164, 1167 (8th Cir.2012). All but one circuit court to have addressed the issue read subsections 2259(b)(3)(A) through (E) .to require proof of proximate cause. Laraneta, 700 F.3d at 990; United States v. Burgess, 684 F.3d 445, 459 (4th Cir.2012); United States v. Kearney, 672 F.3d 81, 95-96, 99 (1st Cir.2012); United States v. Evers, 669 F.3d 645, 659 (6th Cir.2012); United States v. Aumais, 656 F.3d 147, 153 (2d. Cir.2011); Monzel, 641 F.3d at 536-37; United States v. McDaniel, 631 F.3d 1204, 1208-09 (11th Cir.2011); United States v. Laney, 189 F.3d 954, 965 (9th Cir.1999); United States v. Crandon, 173 F.3d 122, 125-26 (3d Cir.1999). Contra, In re Amy Unknown, 701 F.3d at 762, 773 (interpreting subsections 2259(b)(3)(A) through (E) not to require proof of proximate cause). “The ‘clear and indisputable’ test is applied after” the court construes the statute. Gov’t of Virgin Islands v. Douglas, 812 F.2d 822, 832 n. 10 (3d Cir.1987); see In re Wickline, 796 F.2d 1055, 1056-57 (8th Cir.1986).
Section 2259 defines the “full amount of the victim’s losses” as including costs for:
(A) medical services relating to physical, psychiatric, or psychological care;
(B) physical and occupational therapy or rehabilitation;
(C) necessary transportation, temporary housing, and child care expenses;
(D) lost income;
(E) attorneys’ fees, as well as other costs incurred; and
(F) any other losses suffered by the victim as a proximate result of the offense.
18 U.S.C. § 2259(b)(3) (emphasis added). Vicky claims that only the losses in the last subsection require proof of proximate cause. She invokes the “rule of the last antecedent” to conclude that the limiting clause — “as a proximate result of the offense” — in the last item of a series modifies only that last item. See Cincinnati Ins. Co. v. Bluewood, Inc., 560 F.3d 798, 803 (8th Cir.2009), quoting Barnhart v. Thomas, 540 U.S. 20, 26, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003). “The rule of the last antecedent, however, ‘is not an absolute and can assuredly be overcome by other indicia of meaning.’” United States v. Hayes, 555 U.S. 415, 425-26, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009), quoting Barnhart, 540 U.S. at 26, 124 S.Ct. 376. Fast and the government counter with the canon: “When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.” McDaniel, 631 F.3d at 1209 (internal quotation marks omitted), quoting Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348, 40 S.Ct. 516, 64 L.Ed. 944 (1920) (finding “[n]o reason” why the clause at issue “should not be read as applying to” all preceding phrases); see also Fed. Mar. Comm’n v. Seatrain Lines, Inc., 411 U.S. 726, 734, 93 S.Ct. 1773, 36 L.Ed.2d 620 (1973) (“It is ... a familiar canon of statutory construction that [catchall] clauses are to be read as bringing within a statute categories similar in type *721 to those specifically enumerated.” (citation omitted)).
Neither canon is absolute. See Barnhart, 540 U.S. at 26, 28-29, 124 S.Ct. 876; Porto Rico Ry., Light & Power Co., 253 U.S. at 348, 40 S.Ct. 516. More persuasive here is the Second Circuit’s reasoning in United States v. Hayes, 135 F.3d 133, 137-38 (2d Cir.1998). There, the statute at issue, section 2264(b)(3), is identical to section 2259(b)(3), except that its subsection (E) reads: “attorneys’ fees, plus any costs incurred in obtaining a civil protection order.” Hayes, 135 F.3d at 137, quoting 18 U.S.C. § 2264(b)(3). The Second Circuit held, “Reading [subs]ection 2264(b)(3)(E) together with [subsjection 2264(b)(3)(F), attorneys’ fees and costs of obtaining a protection order are among the ‘losses suffered by the victim as a proximate result of the offense.’ ” Id. at 138 (emphasis added) (citations omitted). Vicky interprets Hayes to mean that “the losses listed in subsections (A)-(E) are automatically ... proximately caused by the defendant’s conduct.” Rather, the Second Circuit held that section 2264(b)(3) “authorizes restitution” for the specific losses in subsections 2264(b)(3)(A) through (E). See id. (emphasis added). The “proximate result” clause in the last subsection 2264(b)(3)(F) shows that Congress considered the costs in subsections 2264(b)(3)(A) through (E) “among the losses that are proximately caused by the offense,” but that causation still must be proved in each case. See id.
Similarly, the First Circuit — interpreting section 2259 at issue here — reasoned that the “express inclusion [of the specific losses in subsections 2259(b)(3)(A) through (E) ] ... indicates that Congress believed such damages were sufficiently foreseeable to warrant their enumeration in the statute.” Kearney, 672 F.3d at 97; see United States v. Gamble, 709 F.3d 541, 549, 2013 WL 692512, at *6 (6th Cir. Feb. 27, 2013) (“[T]he list of recoverable losses that the statute provides confirms the breadth of what is a foreseeable consequence of defendants’ actions.”). That section 2259 enumerates those losses “bears emphasis because at the same time Congress enacted § 2259, it enacted another restitution statute that did not enumerate categories of losses.” Kearney, 672 F.3d at 97. Instead, that statute “stated that ‘the term “full amount of the victims losses” means all losses suffered by the victim as a proximate result of the offense.’ ” Id. (footnote omitted), quoting Pub.L. 103-322, § 250002, 108 Stat. 2082, 2083 (codified at 18 U.S.C. § 2327(b)(3)). Contrary to Vicky’s assertion, the variation among these restitution statutes does not mean that Congress eliminated the proximate cause requirement for the specifically enumerated losses in subsections 2259(b)(3)(A) through (E). Rather, variances among these restitution statutes “demonstrate that Congress viewed particular offenses as causing foreseeable risks of certain losses [meriting enumeration] in the[se] [restitution] statutes.” Id. at 97 n. 13. The First Circuit concluded that, although Congress determined that restitution offenses foreseeably cause the losses in subsections (A) through (E), the defendant — to be liable — still must proximately cause the victim’s losses. See id. at 95-97, 99-100 (holding “that the proximate cause requirement was satisfied ... because [the defendant’s] actions resulted in identifiable losses as outlined in the expert reports and Vicky’s victim impact statements” (footnote and citation omitted)).
This court agrees. Congress determined that these restitution offenses typically proximately cause the losses enumerated in subsections 2259(b)(3)(A) through (E). Congress did not mean that a specific defendant automatically proximately causes those losses in every case. The government still has to prove that the *722 defendant proximately caused those losses. See 18 U.S.C. § 2259(a), (b)(3)(A)-(F), (c) (“ ‘[V]ictim’ means the individual harmed as a result of a commission of a crime under this chapter” (emphasis added)); id. § 3664(e); Laraneta, 700 F.3d at 990-92; Kearney, 672 F.3d at 95-97.[5]
V.
Vicky contends that the district court failed to award her the statutorily mandated “full amount of [her] losses.” See 18 U.S.C. § 2259(b)(1). Because issuance of the writ of mandamus is an extraordinary remedy, she must show that the district court clearly and indisputably erred. Restitution is mandatory under section 2259. Id. § 2259(a), (b)(4)(A). The restitution order “shall be issued and enforced in accordance with section 3664.” Id. § 2259(b)(2). Under that section, “[a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence.” Id. § 3664(e) (emphasis added). The government bears the “burden of demonstrating the amount of the loss sustained by a victim as a result of the offense.” Id.
“[I]njury to the child depicted in the child pornography ... is a readily foreseeable result of distribution and possession of child pornography.” Kearney, 672 F.3d at 97 (emphasis added). Proving proximate cause may require nothing more than “expert reports and ... victim impact statements” about the costs enumerated in subsections (A) through (E) that the victim incurred after the defendant’s offense began. See, e.g., id. at 96-100 (discussing proximate cause). Determining the “full amount of the victim’s losses” that a defendant’s offense caused is best left to the district court in the first instance. See 18 U.S.C. § 2259(b)(1) (“[T]he defendant [shall] pay ... the full amount of the victim’s losses as determined by the court .... ” (emphasis added)); Laraneta, 700 F.3d at 991; Burgess, 684 F.3d at 460; United States v. McGarity, 669 F.3d 1218, 1270 (11th Cir.2012).
Vicky claims the restitution award should be $952,759.81 — her (net) documented losses to date. Fast did not possess any images of her until June 25, 2010. But she suffered losses before then. See, e.g., McDaniel, 631 F.3d at 1206. As the district court found, Fast could not have caused — and thus could not be hable for— losses before that date. See Gamble, 709 F.3d at 554, 2013 WL 692512, at *11 (“As a logical matter, a defendant generally cannot cause harm prior to the date of his offense.”); Kearney, 672 F.3d at 97 (“Vicky’s [harms] ... were reasonably foreseeable at the time of [the defendant’s] conduct.” (emphasis added)).
Vicky cites Hayes, where the defendant was liable for the victim’s costs in obtaining civil protection orders even though the offense — violating the protection orders by crossing state lines — occurred after the victim incurred the costs. Hayes, 135 F.3d at 137-38. Although the triggering offense occurred after the victim incurred the costs, they were “a result of conduct by [the defendant] extending back to the time [the victim] obtained the ... protection orders.” Id. at 138. Here, Vicky did not incur losses as a result of Fast’s conduct before his offense began.
Moreover, all $952,759.81 of Vicky’s losses are not clearly and indisput *723 ably traceable to Fast’s crime.[6] See Monzel, 641 F.3d at 538 (“[W]e [cannot] say that [the victim] is clearly and indisputably entitled to the full $3,263,758 from [the defendant] on the ground that her injuries are ‘indivisible.’”); see also Burgess, 684 F.3d at 460 (“The primary difficulty that will face the district court ... will be the determination ... of the quantum of loss attributable to [the defendant] for his participation in Vicky’s exploitation.”). “The government has not shown that [Fast] caused the entirety of [Vicky’s] losses.” Monzel, 641 F.3d at 538 (emphasis in original); see 18 U.S.C. § 3664(e). The court did not clearly and indisputably err in not awarding Vicky $952,759.81 restitution.
The district court ordered Fast to pay $3,333 restitution. The court explained that this award consists of “$2,500 for medical and psychiatric care, occupational therapy, and lost income under 18 U.S.C. § 2259(b)(3)(A), (B), & (D),” and $833 for “attorney fees and costs under 18 U.S.C. § 2259(b)(3)(E).” It reasoned that $3,333 represents the total amount of loss Fast proximately caused Vicky. The court fulfilled its duty to award Vicky the “full amount of [her] losses.” See id. § 2259(a), (b)(1) (“[T]he court shall order restitution ... [and] the defendant [shall] pay ... the full amount of the victim’s losses as determined by the court.”); id. § 2259(c) (“‘[Vlictim’ means the individual harmed as a result of a commission of a crime under this chapter.”); see also Kerr, 426 U.S. at 402, 96 S.Ct. 2119 (“[T]he writ [of mandamus] has traditionally been used in the federal courts only to confine an inferi- or court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.” (citation and internal quotation marks omitted)). The court did not clearly and indisputably err in ordering Fast to pay $3,333 restitution.
# ‡ í¡: sfc í|í ❖
The motions to dismiss Vicky’s direct appeal are granted. The petition for mandamus is denied.

. The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

. This court granted Vicky’s request to waive the 72-hour statutory deadline for deciding her mandamus petition. See 18 U.S.C. § 3771(d)(3).

. On remand, the district court denied as untimely Vicky's motion to intervene. She does not appeal that ruling.

. Vicky also cites a letter from Senator Jon Kyi to the U.S. Justice Department, stating that the CVRA was "not intended to block crime victims from taking an ordinary appeal from an adverse decision affecting their rights (such as a decision denying restitution) under 28 U.S.C. § 1291.” Letter from Senator Jon Kyi to Attorney Gen. Eric Holder (June 6, 2011), reprinted in 157 Cong. Rec. S3609 (June 8, 2011). Statements made after a statute’s enactment are "not a legitimate tool of statutory interpretation. ” Bruesewitz v. Wyeth LLC, - U.S. -, 131 S.Ct. 1068, 1081, 179 L.Ed.2d 1 (2011); see Stoerr, 695 F.3d at 280 n. 7 ("[A] statement by an individual senator does not ‘amend the clear and unambiguous language of a statute.’ ” (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 457, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002))).

. See also S.Rep. No. 103-138, at 56 (1993) (noting that “section [2259] requires sex offenders to pay costs incurred by victims as a proximate result of a sex crime” (emphasis added)).

. Vicky argues that the district court should have held Fast jointly and severally liable for the full amount of her losses. Then, she asserts, he could seek contribution from other defendants liable to her. Section 3664 states, "If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim’s loss and economic circumstances of each defendant.” 18 U.S.C. § 3664(h). Because "there is only one defendant in this case,” section 3664(h) does not apply. E.g., Laraneta, 700 F.3d at 992-93; Aumais, 656 F.3d at 156 ("Section 3664(h) implies that joint and several liability may be imposed only when a single district judge is dealing with multiple defendants in a single case ____”); see Gamble, 709 F.3d at 553, 2013 WL 692512, at *10 (rejecting joint-and-several liability and contribution partly because "in this context a contribution system would be ‘extraordinarily clumsy’ ” (quoting Laraneta, 700 F.3d at 993)).